IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

FARHIYO H. ALI,

                    Plaintiff,                        Case No. 3:10-CV-01232-CL

     v.                                         OPINION AND ORDER

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.

CLARKE, Magistrate Judge:

Farhiyo H. Ali ("plaintiff") brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g), 1383(c), to obtain judicial review of a final decision of the Commissioner. The Commissioner denied plaintiff's application for Title XVI supplemental security income ("SSI") disability benefits under the Act. For the reasons set forth below, the Commissioner's decision is

REVERSED and this case is REMANDED for the immediate payment of benefits.[1]

## PROCEDURAL BACKGROUND

On June 14, 2006, plaintiff protectively filed an application for SSI. Tr. 9, 94-99. After the application was denied initially and upon reconsideration, plaintiff timely requested a hearing before an administrative law judge ("ALJ"). Tr. 46-50, 55-56. On August 5, 2009, an ALJ hearing was held before the Honorable Riley J. Atkins. Tr. 18-43. On August 19, 2009, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 9-17. After the Appeals Council declined to review the ALJ's decision on August 11, 2010, plaintiff filed a complaint in this Court. Tr. 1-3.

## FACTUAL BACKGROUND

Born on June 29, 1963, plaintiff was 28 years old on the alleged onset date of disability and 46 years old at the time of the hearing. Tr. 18, 94. Civil war erupted in Somalia, plaintiff's home country, in 1991; plaintiff witnessed the murder of friends and family and was shot twice. Tr. 211. A refuge, plaintiff fled Somalia through Kenya and arrived in the United States in 2001. Tr. 95, 211. Plaintiff is illiterate in English and has no past relevant work. Tr. 16. She alleges disability beginning December 1, 1991, due to post traumatic stress disorder ("PTSD"), depression, and mental impairment. Tr. 112.

A vocational expert ("VE") testified at the hearing. Tr. 38-42. The VE opined that there were unskilled, light exertion jobs available in the local economy that plaintiff could perform based on the limitations set forth in the residual functional capacity ("RFC") assessment. Id. However, when

---

[1] The parties have consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636.

PAGE 2 – OPINION AND ORDER

asked to assume that, in addition to the limitations set forth in the RFC, plaintiff would be unpredictably absent between four and eight hours per week, the VE testified that plaintiff would not be able to maintain employment at any of the jobs identified. Tr. 40-41. Alternatively, the VE testified that if plaintiff was limited to sedentary work with the additional limitation that she could only sit for 30 to 40 minutes before changing positions, then she could not maintain competitive employment. Tr. 42.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the Commissioner's conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether

PAGE 3 – OPINION AND ORDER

a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; *see* 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity." *Id.*; *see* 20 C.F.R. § 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." *Yuckert*, 482 U.S. at 141; *see* 20 C.F.R. § 416.920(e). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141. At step five, the Commissioner must establish that the claimant can perform other work. *Id.* at 142; *see* 20 C.F.R. § 416.920(e) & (f). If the Commissioner meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled. 20 C.F.R. § 416.966.

## DISCUSSION

### I. The ALJ's Findings

At step one of the sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since June 8, 2006. Tr. 11, Finding 1. At step two, the ALJ found that plaintiff had the following severe impairments: major depressive disorder, PTSD,

PAGE 4 – OPINION AND ORDER

diabetes mellitus, history of right ankle fracture, and right calf gunshot wound. *Id.*, Finding 2. At step

three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or

equal the requirements of a listed impairment. Tr. 12-14, Finding 3. These findings are not in

dispute.

Because she did not establish disability at step three, the ALJ continued the evaluation

process to determine how plaintiff's medical impairments affected her ability to work. The ALJ

found that plaintiff had the RFC to perform a reduced range of light exertional work. Tr. 14, Finding

4. Plaintiff, however, was to avoid climbing, except for stairs. *Id.* Further, plaintiff could do routine,

unskilled work, which required no public contract and required no English language skills. *Id.*

Plaintiff disputes her RFC assessment.

At step four, the ALJ concluded that transferability of job skills was not at issue because

plaintiff did not have any past relevant work. Tr. 16, Finding 5. This finding is not in dispute.

Finally, at step five, the ALJ found that there are jobs existing in significant numbers in the national

and local economy that plaintiff could perform. *Id.*, Finding 9. This finding is in dispute. Based on

these findings, the ALJ determined that plaintiff was not disabled within the meaning of the Act. Tr.

17, Finding 10.

II. Plaintiff's Allegations of Error

Plaintiff argues that the ALJ erred by: 1) framing the RFC in a manner that reverses the

credibility analysis; 2) improperly discrediting her testimony; and 3) failing to properly consider the

opinion of Dr. Ugolini. *See* Pl.'s Opening Br. 1. In response, the Commissioner concedes that it was

error for the ALJ to discredit the opinion of Dr. Ugolini; accordingly, the Commissioner moves the

Court to reverse the ALJ's decision and remand this case for further proceedings. *See* Def.'s Resp.

Br. 3. Plaintiff urges the Court to instead remand this case for the immediate award of benefits. *See* Pl.'s Reply Br. 2.

A. Use of the RFC to Discredit a Claimant's Testimony

Plaintiff first argues that the ALJ erred by using "boilerplate" language that reverses the credibility analysis. Pl.'s Opening Br. 3-4. This, she argues, demonstrates that the ALJ made his credibility findings only to conform with the stated RFC.

The ALJ stated: "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity." Tr. 14. Plaintiff is correct; judges in this district have previously noted that "the ALJ may not make a negative credibility finding because the claimant's alleged symptoms are inconsistent with [the] RFC assessment." *Carter v. Astrue*, 6:11-CV-06224-AA, 2012 WL 2051804, at *5 (D. Or. June 4, 2012); *see also Carlson v. Astrue*, 682 F. Supp. 2d 1156, 1167 (D. Or. 2010); *Young v. Astrue*, 3:09-CV-00023-AC, 2010 WL 331781, at *5 (D. Or. Jan. 21, 2010).

Here, however, as in *Carter*, the ALJ follows the "boilerplate" language with reasons ostensibly supporting his adverse credibility determination. Tr. 14-15. The use of this "boilerplate" language is therefore "irrelevant to the ALJ's ultimate disability conclusion." *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Further, plaintiff fails to demonstrate how this error was prejudicial. *See McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) (as amended) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm."). Therefore, this error is harmless.

B. Plaintiff's Credibility

Plaintiff next argues that the ALJ's reasons for discounting her testimony were legally

insufficient. *See* Pl.'s Opening Br. 4-5. The Commissioner does not respond to this contention. *See* Def.'s Response Br. 6 n.1.

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence, and other evidence." 20 C.F.R. § 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996)).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also Bunnell*, 947 F.2d at 346-47.

Plaintiff testified at her August 5, 2009 hearing before the ALJ that she experiences pain primarily in her right leg. Tr. 32. Further, she testified to the following physical limitations: the ability to walk three or four blocks, to stand for five minutes, and to sit for forty minutes. Tr. 34. She

also testified that she could carry a gallon of milk, although for not more than a short distance. Tr. 34, 36.

Mentally, plaintiff reported substantial problems with her concentration and memory. She testified that her son and a friend help her to fill out paperwork, remember appointments, and provide transportation. Tr. 23-24. Further, she testified that because of her PTSD she continues to have memories of the traumatic events that occurred in Somalia, which can result in her being easily startled. Tr. 22-23.

The ALJ cited plaintiff's reported activities of daily living as the sole reason for finding her testimony not credible. Tr. 14-15 ("[C]laimant has described daily activities inconsistent with her allegations."). The ALJ noted that plaintiff is a single parent living with her two teenage sons who does all of the cooking and some light chores. *Id.* Further, the ALJ noted that plaintiff goes to her mosque with her sons and has no significant difficultly driving. *Id.* Plaintiff's testimony regarding her ability to concentrate was also rejected by the ALJ because she "spends most of her time during the day reading the Koran or listening to religious readings on audiotape." Tr. 14-15.

Daily activities can form the basis of an adverse credibility finding where the claimant's activities either contradict his or her other testimony or meet the threshold for transferable work skills. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, a claimant need not be utterly incapacitated to receive disability benefits and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Orn*, 495 F.3d at 639 (9th Cir. 2007); *see also Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (requiring the level of activity to be inconsistent with plaintiff's claimed limitations to be relevant to his or her credibility).

PAGE 8 – OPINION AND ORDER

The activities cited by the ALJ do not offer clear and convincing reasons to discount plaintiff's testimony. As plaintiff correctly argues, her reported activities do not contradict her reported limitations. Further, none of the activities identified by the ALJ demonstrate plaintiff has transferrable work skills.

The ALJ found plaintiff "take[s] care of personal grooming." It is difficult to see how this either contradicts the limitations testified to by plaintiff or how it is a "transferable work skill." *See Orn*, 495 F.3d at 639. Similarly, the ALJ concludes that plaintiff's ability to do "light household chores" and to "shop for groceries" was contrary to her alleged limitations. Tr. 14. However, plaintiff testified at the hearing that she would need to rest for "[s]ometimes a few hours" after performing twenty to twenty-five minutes of chores. Tr. 37. Plaintiff's ability to do "light housework" is not an indication of her ability to work nor does it contradict her reported limitations, particularly because she must do the chores in small increments with intervening periods of rest. *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) ("[E]vidence that [the claimant] could assist with some household chores was not determinative of disability."). For similar reasons, doing the family's cooking, driving a car, and attending a weekly religious service do not constitute activities "consum[ing] a substantial part of [her] day." *Vertigan*, 260 F.3d at 1050 ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").

The ALJ disregarded plaintiff's testimony about her mental limitations because she spends the majority of her time reading from the Koran or listening to religious readings on audiotape, something the ALJ found demonstrated an ability to "concentrate, pay attention, and remember." Tr. 15. In *Orn,* the court concluded that the plaintiff's daily activities, which included reading, watching

PAGE 9 – OPINION AND ORDER

television, and coloring, were not transferable to a position requiring "sustained concentration and attention." *Orn*, 495 F.3d at 639. For the same reason, plaintiff's reading of and listening to religious texts is not, without more, clear and convincing evidence sufficient to discount her credibility. This is particularly true because the religious texts could be read for reasons other than comprehension or enjoyment; namely, because plaintiff is a devoted member of her faith. *Cf. Reddick*, 157 F.3d at 722 ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."); *see also* Tr. 213 (plaintiff never consumes alcohol or drugs because of her religious beliefs).

Therefore, the ALJ's credibility determination is not supported by clear and convincing reasons and is not sustained.

C. Dr. Ugolini's Opinion

The Commissioner concedes that the ALJ did not provide legally sufficient reasons for discounting the opinion of Kathleen Ugolini, Ph.D., an examining psychologist. Def.'s Resp. Br. 3. The Court agrees. Therefore, the only issue remaining is whether to remand for further proceedings or for the payment of benefits.

III. Remand

The ALJ erroneously evaluated plaintiff's testimony and the testimony of Dr. Ugolini. Consequently, the ALJ's RFC analysis was flawed and the ALJ's step five analysis was in error. The decision is now whether to remand for further proceedings or for the immediate payment of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has

PAGE 10 – OPINION AND ORDER

been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)).

Under the "credit as true" doctrine, evidence may be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id.* The "credit as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell*, 947 F.2d at 348). If there are "outstanding issues" that remain, then the court will not apply the rule. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

The ALJ's analysis of plaintiff's testimony and Dr. Ugolini's report is erroneous for the reasons established above. Thus, the ALJ's subsequent RFC assessment and hypothetical questions to the VE at step five in the sequential disability analysis are not based upon the proper legal standards. Therefore, the Court finds the first element is satisfied.

The second element of the credit as true doctrine requires the court to determine if "outstanding issues remain in the record." *Strauss*, 635 F.3d at 1138 (quotation omitted). The Commissioner argues that Dr. Ugolini's report is inconsistent with the remaining medical evidence and, therefore, a remand is appropriate in order to obtain an updated medical record and further consultative examinations. Def.'s Resp. Br. 6-8.

The Commissioner overstates the level of inconsistency between Dr. Ugolini's report and the

PAGE 11 – OPINION AND ORDER

remaining evidence in the record. Particularly probative is the psychiatric medical evidence in the record since Dr. Ugolini's report. *See generally* Tr. 464-83 (June 2006 to March 2009). Although the reports are largely illegible, it is apparent that plaintiff continued to present with anxiety. *See, e.g.,* Tr. 474 (Nov. 6, 2007); Tr. 473 (Dec. 11, 2007); Tr. 467 (Sept. 9, 2008); *see also* Tr. 471 (March 2008 annual mental health assessment notes plaintiff "continues to present psychiatric symptoms"). Additionally, the Global Assessment of Function ("GAF") scores assigned most contemporaneously with plaintiff's July 31, 2006 evaluation by Dr. Ugolini show a decreasing trend, from 65 to 60. Tr. 482-83 (July 13, 2006 and Sept. 14, 2006). Further, since plaintiff's examination by Dr. Ugolini, she has been consistently assigned a GAF score of 55. *See* Tr. 464-81.

This evidence belies the notion implicit in the Commissioner's argument that Dr. Ugolini's evaluation was anomalous. Additionally, allowing the Commissioner an opportunity to order another neutral psychiatric examination walks dangerously close to the "heads we win; tails, let's play again system of disability benefits" condemned by the Ninth Circuit. *See Benecke*, 379 F.3d at 595 (internal quotation omitted). Thus, the Commissioner has not made a compelling argument that there are issues that must be resolved before the award of disability benefits can be made. *See Strauss*, 635 F.3d at 1138. Further, the Court finds that this element is satisfied in the present case.

As a final matter, the court must determine whether the record clearly requires an award of benefits after the improperly rejected evidence is credited. *Id.* Specifically, plaintiff testified that primarily because of pain in her right leg she cannot walk more than three or four blocks, stand longer than five minutes, sit for longer than forty minutes, or carry a gallon of milk for more than a short distance. Tr. 34, 36. Further, she testified that her PTSD has resulted in concentration and memory problems. Tr. 22-24. These limitations are expounded upon in Dr. Ugolini's report, which

PAGE 12 – OPINION AND ORDER

concluded that the combined effect of plaintiff's anxiety and pain would cause her to have "significant difficulty maintaining focused attention and persisting in her work throughout an 8-hour day." Tr. 215.

The ALJ included all of the mental limitations described in Dr. Ugolini's report, except the limitation he found not credible, in his hypothetical to the VE.. Tr. 39-40, 215. However, when the ALJ also added the limitation that plaintiff would be unpredictably absent between four and eight hours per week, the VE testified that competitive employment would be unsustainable. Tr. 41. Similarly, the VE also testified that a person "limited to sedentary level work . . . [who] could only sit for 30 to 40 minutes at a time before she had to change positions" would be unable to sustain "full-time competitive employment." Tr. 42.

Thus, the improperly considered evidence, when credited as true, establishes that plaintiff is disabled. Consequently, the ALJ's decision is reversed and this case is remanded for the immediate payment of benefits.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and this case is REMANDED for the immediate calculation and award of benefits

IT IS SO ORDERED.

DATED this _3/_ day of July, 2012.

Mark D. Clarke
United States Magistrate Judge

PAGE 13 – OPINION AND ORDER